UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BARNEY N HOLT, III #248556 | CIVIL ACTION NO. 17-cv-548 SEC P |
| VERSUS | CHIEF JUDGE HICKS |
| BURL CAIN | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Barney Noel Holt, III ("Petitioner") was charged with possession of more than 28 grams of methamphetamine. A Caddo Parish jury convicted him, he was adjudicated a third habitual offender, and he received a mandatory life sentence. His conviction and sentence were affirmed on appeal. State v. Holt, 112 So.3d 1008 (La. App. 2d Cir. 2013), writ denied, 130 So.3d 339 (La. 2014). Petitioner also pursued a post-conviction application in the state courts. He now seeks federal habeas corpus relief on the grounds that the trial court wrongfully denied a motion to suppress as untimely, his sentence is in violation of the ex post facto clause, and his trial and appellate attorneys rendered ineffective assistance of counsel. For the reasons that follow, it is recommended that his petition be denied.

### Background Facts

Shreveport police used a confidential informant ("CI") who entered Petitioner's home and purchased drugs from him. The police used that information to obtain a search warrant for Petitioner's home. The officers who executed the warrant found Petitioner

alone in his home with a syringe loaded with liquid methamphetamine tucked behind his ear. Police also found two bags of material in Petitioner's wallet. A crime lab chemist testified that one of the bags contained methamphetamine, and the other contained a cutting agent. A canine search of the home found a plastic candy tube that held a bag of methamphetamine. The total weight of drugs seized well exceeded 50 grams.

Petitioner faced several charges. He went to trial on a charge of possession of over 28 grams of methamphetamine. The jury deliberated less than 10 minutes before returning a unanimous verdict of guilty.

**Denial of Motion to Suppress as Untimely**

Petitioner appeared in court the day after his arrest and said that he could not afford a lawyer. The court appointed attorney Carlos Prudhomme. A few months later, Prudhomme withdrew, and the court appointed attorney Kevin Berg. About three months later, attorney Joseph M. Clark, Sr. enrolled as counsel. Tr. 1. Petitioner represents in his memorandum that Clark was retained, but the record is not clear on that point.

The trial commenced about five months later. Before voir dire, Mr. Clark recommended that Petitioner resolve all his many outstanding charges by accepting a plea offer for two concurrent 30 year terms. The judge and prosecutor warned that Petitioner faced up to mandatory life if convicted and multi-billed, but Petitioner rejected Clark's advice and the plea offer. Tr. 223-36.

Jury selection began on March 8, 2010. Just as testimony was to begin on May 10, attorney Clark filed a motion to suppress on the grounds that the issuance of the search warrant and its execution were unconstitutional. Tr. 73-74. Clark stated that it was not

until shortly before the trial that he knew which of Petitioner's several charges was going to trial, and he did not have all discovery corresponding to the particular docket number that was at stake. He said that the prosecutor provided him with the material the day before, and he prepared the motion to suppress. Tr. 516-18.

Pretrial motions must generally be made or filed within 15 days after arraignment. La. C. Cr. P. Art. 521. A motion to suppress must ordinarily be filed within that time, but La. C. Cr. P. Art. 703(C) provides an exception if opportunity did not exist, or neither the defendant nor his counsel were aware of the evidence or ground for the motion, or if the failure to timely file was otherwise excusable. The article also gives the court discretion to permit the filing of a motion to suppress "at any time before or during the trial."

Judge Craig Marcotte, who presided over the trial, denied the motion as untimely. He said that he would give defense counsel latitude to cross-examine the agents about the warrant issues if counsel wanted to go there. Tr. 518-20. Counsel did examine the agents on the search warrant issues. That testimony will be reviewed because of its potential relevance to this issue, and because the testimony is relevant to ineffective assistance of counsel claims that will be addressed below.

Agent Robert Robinson, III testified for the State. On direct examination, he merely stated that he obtained a search warrant for Petitioner's address, and he described the execution of the warrant. Tr. 559. On cross-examination, defense counsel asked Robinson about the process that led to the warrant. In response to counsel's questions, Robinson explained that he used a CI who was given photographed or photocopied "buy funds," equipped with a device that allowed officers to monitor audio, and sent inside Petitioner's

home to buy drugs from him. That happened on the day before the warrant was executed. Robinson said that any recording of the CI's conversation with Petitioner was not preserved because Petitioner was not charged with a crime based on that transaction. Tr. 594-610.

Robinson mentioned on cross-examination that the CI was "checked," and he explained on redirect that a CI is searched before the transaction to ensure that the drugs the CI delivers to the police came from the transaction with the suspect. In the transaction that led to the warrant, the CI bought about four grams of methamphetamine from Petitioner. Tr. 623-27.

The State called Officer Carl Townley, who has more than 20 years of experience in undercover work and drug investigations, and he was allowed to testify as an expert on search warrant execution and undercover techniques. Tr. 645-50. The known buy funds that the CI said she gave Petitioner were not recovered during the execution of the warrant. Townley testified that agents do not always find the funds because "money changes hands so fast" in the drug business. Tr. 656. Agent Robinson testified that officers recovered from Petitioner's home $809 of currency plus a Western Union receipt that showed he had wired $600 to someone at 10:48 p.m. the date the CI made her purchase. Tr. 573, 580.

Petitioner was appointed counsel from the Louisiana Appellate Project for his direct appeal. The appellate attorney filed an <u>Anders</u> brief that noted trial counsel had filed a motion to suppress that was denied as untimely, and the appellate attorney suggested that might be the basis for an ineffective assistance of counsel claim that would be more properly litigated in a post-conviction application. Tr. 769-77. The appellate court directed counsel to brief what it believed was a non-frivolous issue regarding the denial of the

motion to suppress as untimely. Tr. 805. The court's opinion, issued after briefing, reviewed the applicable state procedural rules and relevant facts. The record showed that Petitioner's original counsel was provided with the relevant evidence as early as May 2009, well before the March 2010 trial. The court was also not persuaded that the State's failure to notify defense counsel as to which criminal charge it intended to prosecute led to an inability to request the relevant discovery. There was a hearing four months before trial at which Petitioner and his trial attorney were advised that trial would commence on one of the related criminal charges, which allowed ample opportunity for counsel to review each matter and file any pretrial motions. The appellate court found that the trial judge did not abuse his discretion in denying the motion to suppress as untimely. Tr. 834-38. The Supreme Court of Louisiana denied writs without comment. Tr. 911.

Petitioner seeks habeas relief based on an argument that the state courts misinterpreted or misapplied their own rules, which resulted in the denial of his constitutional rights. He argues, based on an amendment to the charge, that the motion was actually timely. The original bill of information mistakenly referred to intent to distribute as a part of the charged offense, and the bill was amended on March 8, 2010, prior to voir dire, to delete the mistaken reference. Tr. 5, 226. Petitioner argues that this amounted to a "new charge, new arraignment, and a new 15-day time limit" under the state law rules.

The State argues that this claim was not properly exhausted, is procedurally barred, and lacks merit. The court may forgo addressing the procedural defenses and deny the claim on the merits. 28 U.S.C. § 2254(b)(2); Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th

Cir. 1995). This claim was adjudicated on the merits in state court, so habeas relief is not permitted unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Section 2254 (a) states that the federal court may issue a writ to a state prisoner only on the ground that he is in custody in violation of the constitution or laws of the United States. Petitioner briefly invokes the federal constitution, but his real argument is that the state courts misapplied their own procedural rules. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). To the extent that Petitioner presents a federal claim with respect to this issue, he has not identified clearly established Supreme Court precedent that was violated or other grounds that would permit habeas relief under Section 2254(d).

**Ex Post Facto Claim**

Petitioner was convicted in 2010 and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. He argued in his post-conviction application that his sentence was rendered illegal by subsequent legislation that repealed La. R.S. 15:308, a provision that allowed certain prisoners who were convicted and sentenced prior to June 15, 2001 to apply to a risk review panel. The legislature repealed

a portion of the statute in 2012 and then reenacted it in 2014 to allow such persons to apply to the committee on parole. Petitioner makes a confusing argument that this rendered his sentence illegal by granting jurisdiction over parole to a committee when parole is the sole province of the courts. He also argues that the legislation lacked sufficient guidelines and that the application of legislation enacted after his 2010 conviction constitutes an ex post facto application of the law. Tr. 1019.

The trial court denied the claim on the merits. It noted that the reduction of a final sentence is the equivalent of commutation, which is a power constitutionally reserved to the executive branch. Thus, the provisions of the statutes cited did not render any sentence illegal under state law. Tr. 1148-49. The appellate court and supreme court denied writ applications without specifically addressing this issue. The State argues that Petitioner did not exhaust a federal claim with respect to this issue, the claim is now procedurally defaulted, and the claim lacks merit. Only lack of merit need be addressed.

Article 1, § 10 of the United States Constitution provides: "No State shall ... pass any ... ex post facto Law ...." Among the laws that are considered to violate the prohibition are those that change the punishment, and inflict a greater punishment, than the law annexed to the crime when it was committed. Calder v. Bull, 3 U.S. 386, 3 Dall. 386 (1798). "To prevail on this sort of *ex post facto* claim, [a petitioner] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." Johnson v. U.S., 120 S.Ct. 1795, 1800 (2000). The Supreme Court has also "recognized that legislative modifications to early release provisions or parole standards may violate

the prohibition on ex post fact legislation if applied retroactively." Warren v. Miles, 230 F.3d 688, 692 (5th Cir. 2000).

Petitioner's arguments do not show that any state law passed after his conviction rendered his mandatory life sentence more severe or that there has been legislative modification to his parole eligibility. His sentence stipulated that it was to be without benefit of parole. Tr. 756. He has not explained how the legislation he refers to could have, under any of its versions, resulted in him receiving parole. Petitioner certainly has not demonstrated that the state court's rejection of this claim ran afoul of clearly established federal law as decided by the Supreme Court. His vague and confusing arguments do not permit habeas relief.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that his attorneys rendered ineffective assistance of counsel ("IAC") in several ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state court denied the Strickland claims on the merits during post-conviction review.

    **B. Habeas Burden**

Petitioner's IAC claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. Not Providing Transcript

Petitioner's first IAC argument is that appellate counsel did not provide him with a complete copy of the trial transcript. The court pointed out that Petitioner did not exhaust his state court remedies with respect to this claim. Doc. 7. Petitioner moved to dismiss the claim, and the court granted his request. Docs. 8 & 9.

### D. Not Filing Motions; Motion to Suppress

Petitioner argues that his first two appointed counsel did not file any motions at all, and attorney Clark filed a motion to suppress (discussed above) that was denied as

untimely. He argues that his attorneys should have (1) filed other unspecified motions and (2) prevailed on a challenge to the search warrant.

Petitioner presented these IAC claims in his post-conviction application. Judge Charles Tutt, who ruled on the application, applied the Strickland standard and denied the first claim because Petitioner did not sufficiently identify a meritorious motion that should have been filed, nor did he demonstrate that the result of the trial might have been different had such a motion been filed. Tr. 1145-46. With respect to the claim that counsel should have successfully challenged the search warrant, Judge Tutt found that Petitioner "failed to provide any evidence in support of his contention that the affidavit contained false statements." Tr. 1147.

The appellate court cited Strickland and the Louisiana code article that puts the burden on a post-conviction applicant to prove his claims. It then summarily addressed all of the Strickland claims. "Upon the showing made, the writ is denied." Tr. 1334. The Supreme Court of Louisiana denied a writ application in a per curiam that stated that Petitioner "fails to show he received ineffective assistance of counsel under the standard of Strickland… ." Tr. 1564-66.

Petitioner identifies only a single motion, the motion to suppress, that he contends his attorneys should have filed. Attorney Clark filed the motion to suppress, but Petitioner faults him for waiting too late to do so and for not challenging the search warrant on the grounds that it was obtained using false statements by the police. A review of these challenges requires a review of the merits of the arguments for suppression. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal

allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

The warrant application (Tr. 66-67) by Agent Robinson stated that he and other agents were investigating Petitioner for sales of meth. Petitioner had over 20 arrests since 1983, was paroled in 2007 on a meth conviction, and arrested by Robinson in 2008 for possession of more than 28 grams of meth. While Petitioner was out on bond after that arrest, agents received information from CIs that Petitioner was traveling to Dallas to buy quantities of meth that he was selling in Caddo Parish. Some CIs reported seeing Petitioner in possession of more than 28 grams of meth.

Agent Robinson's application also described the CI purchase that he arranged and monitored within the prior 48 hours. Robinson wrote that he and another officer checked the CI for contraband, provided her buy money, monitored the transaction electronically, and witnessed her enter and leave Petitioner's home. The officers then met with the CI, who handed over two bags that contained a total of approximately four grams of meth. Robinson said that the CI told him that she had purchased the meth from Petitioner, and a field test of the material was positive for the presence of meth. The trial judge allowed Mr. Clark to cross-examine Robinson and the other officers about the basis for the search warrant. Clark explored the use of the CI, how the transaction was monitored and verified,

and generally tried to poke holes in the basis for the warrant. As discussed above, his efforts were not successful.

Petitioner contends that the affidavit included false statements about the amount of meth purchased by the CI, that the CI was searched before being sent into his house, and that the CI was equipped with a recording device. Affidavits supporting a search warrant are presumptively valid, and suppression is not warranted on such a challenge unless the defendant establishes that (1) the affidavit contains a false statement, (2) the false statement was made intentionally or with reckless disregard for the truth, and (3) the remaining content in the affidavit, if the false statement is excised, fails to establish probable cause. Franks v. Delaware, 98 S.Ct. 2674 (1978). The alleged false statements claimed by Petitioner were explored at trial by defense counsel, and none of them proved to be false.

Petitioner also complains that the warrant application is questionable because the buy money was never introduced at trial. Petitioner notes that the buy funds were not introduced at trial, but that transaction was not on trial, and the funds were not recovered in the search. The officers' trial testimony explained the likely reasons—high turnover of cash in the drug trade and Petitioner's recent wire transfer—the funds were not recovered. Petitioner makes much of the alleged absence of a recording of the CI transaction, but Robinson explained that the recording (which he said many officers do not even make) of the monitored transaction was not preserved because no criminal charges were based on that transaction. (That charging decision was made to protect the CI from having to be identified and testify at trial.)

The search warrant provided that it could be executed "without knock and announcement due to the safety of Officers." Tr. 65. Petitioner argues that the provision for a "no knock" warrant was unconstitutional. The knock and announce rule is part of the Fourth Amendment, but it is not necessary to follow it when circumstances present a threat of physical violence, there is reason to believe that evidence would likely be destroyed if advance notice were given, or it would be futile. Hudson v. Michigan, 126 S.Ct. 2159, 2162 (2006). The Supreme Court requires only that police have a reasonable suspicion under the particular circumstances that one of those grounds for failing to knock and announce exists. Id. at 2163. Robinson's warrant application did not directly state a case for a "no knock" warrant, but one was granted. A violation of the knock-and-announce rule does not require application of the exclusionary rule to suppress evidence seized pursuant to a valid search warrant. Id. at 2167-68.

Even if Petitioner's attorney had timely filed a motion to suppress and presented all of the evidence that was developed at trial and made all the arguments offered by Petitioner, the motion almost certainly would have been denied on the merits. This is a habeas challenge under Section 2254(d)(1), so the Petitioner must establish not only that suppression of the evidence would be the correct result, but also that it would be contrary to or an unreasonable application of clearly established federal law for the state habeas court to rule otherwise. Evans v. Davis, 875 F.3d 210, 219 (5th Cir. 2017). Petitioner has not met that heavy burden. The state court's rejection of the IAC claims related to the warrant and search were not an objectively unreasonable application of Strickland or other applicable federal law.

### E. Constructive Denial of Counsel

Petitioner argued in his post-conviction application that attorney Clark did not show up for a court date, and the trial court erroneously relieved Clark and replaced him with appointed counsel for appeal. Petitioner argued that this amounted to constructive denial of appellate counsel and denial of the right to counsel of choice.

Judge Tutt wrote that Petitioner was found indigent at an evidentiary hearing in February 2012. Mr. Clark was relieved of representation, and new counsel was appointed for appeal. Judge Tutt stated that Petitioner provided no evidence that he had obtained funding and retained Clark, and an indigent defendant does not have the right to have a particular attorney appointed. Accordingly, post-conviction relief was denied on this IAC claim. Tr. 1146-47. The state appellate court and supreme court summarily denied the claim as described above.

"A criminal defendant has a constitutional right to receive effective assistance of counsel on his first appeal." Dorsey v. Stephens, 720 F.3d 309, 319 (5th Cir. 2013), citing Evitts v. Lucey, 105 S.Ct. 830, 834 (1985). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. U.S., 108 S.Ct. 1692, 1697 (1988). Thus, while there is generally a right to counsel of choice, it is subject to limits. One of the limits is that "the right to

counsel of choice does not extend to defendants who require counsel to be appointed for them." U.S. v Gonzales-Lopez, 126 S.Ct. 2557, 2565 (2006). "[A] defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." Wheat, 108 S.Ct. at 1697. "The decision of which counsel to appoint an indigent defendant is within the sound discretion of the court." Ellis v. Davis, 2019 WL 2716507, *4 (S.D. Tex. 2019), citing Moreno v. Estelle, 717 F.2d 171 (5th Cir. 1983).

The "constructive denial of counsel occurs … in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." U.S. v. Goodwin, 774 Fed. Appx. 196, 197 (5th Cir. 2019), quoting Craker v. McCotter, 805 F.2d 538, 542 (5th Cir. 1986). The court appointed counsel to represent the indigent Petitioner on appeal, and that counsel filed a brief on his behalf as directed by the court. There was no denial of appellate counsel, constructive or otherwise. Petitioner has not demonstrated that the state court's adjudication of this claim was an objectively unreasonable application of clearly established federal law, so habeas relief should be denied.

### F. Hearsay and Confrontation Clause Issues

Petitioner argues that the State had police officers testify about the CI's statements, which were hearsay, and they were used against Petitioner in violation of his right to confront and cross-examine witnesses. Petitioner combines with this an argument that the State should have identified the CI so that he could call her as a witness. Judge Tutt denied

the claim because Petitioner did not demonstrate exceptional circumstances that would require divulging the CI's identity. Tr. 1147-48.

The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless she was unavailable and the accused had a prior opportunity for cross-examination. Crawford v. Washington, 124 S.Ct. 1354 (2004). Violations of that rule are subject to a harmless error analysis. Bullcoming v. New Mexico, 131 S.Ct. 2705, 2719 n. 11 (2011); Fratta v. Quarterman, 536 F.3d 485, 507–08 (5th Cir. 2008).

Petitioner does not identify any testimonial statement by the CI that the State introduced at trial to prove the charged offense. The State made only a generic presentation that it obtained the search warrant that led to the discovery of the drugs at issue. It was defense counsel who elicited testimony about the use of the CI and how the search warrant was obtained. This was part of the defense effort to demonstrate that the warrant was unlawful. Once the defense opened the door, the prosecutor on redirect asked questions about the CI's transaction. Even then, there was no reference to a testimonial statement by the CI that implicated Petitioner for the offense on trial. Petitioner has not established any prejudicial violation of rights under the Confrontation Clause or, more important, that the state court's denial of this claim was an objectively unreasonable application of Strickland or other clearly established federal law.

Petitioner also complains that appellate counsel should have raised the Confrontation Clause issue on appeal. Effective assistance of appellate counsel does not require counsel to raise every non-frivolous ground of appeal available. It requires only

that counsel perform in a reasonably effective manner. <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998), citing <u>Evitts v. Lucey</u>, 105 S.Ct. 830 (1985). When a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. <u>Smith v. Robbins</u>, 120 S.Ct. 746, 764 (2000); <u>Moreno v. Dretke</u>, 450 F.3d 158, 168 (5th Cir. 2006). Petitioner has not demonstrated that such an argument might have been successful on appeal or that the state court's rejection of this claim was an objectively unreasonable application of clearly established federal law.

Petitioner complains that the prosecution should have divulged the identity of the CI, even though defense counsel mentioned at trial that he knew who she was. The prosecution has an informer's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. <u>Roviaro v. U.S.</u>, 77 S.Ct. 623 (1957). The privilege is not absolute, and the identity of the CI may have to be disclosed if a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense weighs in favor of disclosure. <u>Id</u>. See <u>U.S. v. Ortega</u>, 854 F.3d 818, 824 (5th Cir. 2017); <u>State v. Lewis</u>, 188 So.3d 1040 (La. 2016).

The CI did not play such a role with respect to the drug charge on trial that the state court was compelled to order disclosure of her identity. There would have been no testimony about her at all had the defense not brought her up in an attempt to undermine the legality of the search. Defense counsel cannot be blamed for that strategy, which was about all he had to work with in light of the overwhelming evidence of Petitioner's guilt,

but it did not serve to mandate disclosure of the CI's identity. The state court's rejection of this claim was reasonable.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of July, 2020.

*[signature]*

Mark L. Hornsby
U.S. Magistrate Judge